## No. 9551.

### GALVIN *v*. STOKES ET AL.

ESCROW—*Violation of Conditions.* Until performance of the conditions of a deposit in escrow the title to whatever is to be conveyed remains in the grantor; and if he died before the performance of the conditions the title descends to his heirs, subject only to the purchaser's contract.

Defendant company by threats of a criminal prosecution against one
with whom plaintiff was associated in business induced plain-
tiff to deposit in escrow a certified check, upon an agreement
that if a criminal proceeding then pending should not be dis-
missed the check should be returned. The criminal proceeding
was not dismissed, but the escrow holder nevertheless delivered
the check to the payee, who obtained the money thereon.

Held that plaintiff was entitled to recover the amount of the check.

*Error to Denver District Court, Hon. Clarence J. Morley,*
*Judge.*

Mr. S. J. SACKETT and Mr. C. A. IRWIN, for plaintiff in
error.

Mr. ARCHIBALD A. LEE, for defendants in error.

Mr. Justice Scott delivered the opinion of the court.

THE complaint in this case, in so far as is important to
consider, alleged that plaintiff and one Fred C. Bartle were
the sole owners of the capital stock of the Merchant's
Transportation Company, engaged in business in the city
of Denver, and that Bartle was the general manager of
said corporation, and that his personal services were neces-
sary to the success of the business of the corporation; that
the defendant, the Denver Transit and Warehouse Com-
pany, represented to plaintiff that Bartle, while in the em-
ploy of said company, had embezzled $5,000 of its money,
and threatened to prosecute Bartle criminally, and to levy
attachments on the property and business of said Mer-
chant's Transportation Company, and thereby destroy its
business, unless the plaintiff should deliver to the defend-
ant, Charles A. Stokes, attorney for the defendant com-
pany, her certified check drawn on a Denver bank, for two
thousand dollars, and unless the said Bartle should secure
an additional sum of three thousand dollars; that under
such circumstances she did deliver to said Stokes her certi-
fied check for $2,000 in escrow and received therefor the
following escrow receipt: "This is to certify that I have
received from Fred C. Bartle a note for $3,000 secured by

a mortgage upon land in Jefferson County, Colorado, and I have also received from Maud Galvin a certified check for $2,000, which note, mortgage and certified check are deposited with me upon the following conditions, viz:.

"That the said Fred C. Bartle is indebted to the Denver Transit and Warehouse Company in the sum of $5,000 and criminal proceedings have been instituted against him through the office of the District Attorney and are now under his control.

"Now if the said District Attorney is willing to dismiss the said proceedings, the foregoing note, mortgage and certified check are to be turned over to, and delivered to, the Denver Transit and Warehouse Company in settlement of, and in full satisfaction of, their claim against the said Bartle; but if the said District Attorney refuses to dismiss said proceedings, then the said note, mortgage and certified check shall be returned to Fred C. Bartle and Maud Galvin.

"Dated at Denver, Colorado, this 16th day of October, A. D. 1913.

"(Signed)                         CHARLES A. STOKES."

The complaint further alleges that the criminal prosecution was not dismissed and the said certified check was wrongfully delivered to and cashed by the defendant company. Prayer was for judgment for the amount of said check with interest.

The defendants filed their demurrer to the complaint upon the ground that it did not state facts sufficient to constitute a cause of action against the defendant. The demurrer was sustained by the court and the plaintiff, electing to stand upon her complaint, brings the case here on error.

This matter was before the court on the petition of Bartle and his wife to cancel their note and mortgage given by them in the same transaction. *Bartle v. Bond,* 65 Colo. 367, 176 Pac. 832. The court there said: "It is clear that said instruments were executed at the demand of the defendant company, and in accordance with an agreement

evidenced by said escrow receipt. In determining what was the consideration of such agreement, it is wholly immaterial whether or not the sum claimed by the company was due. An agreement to give security for a debt is a matter quite apart from the transaction in which the debt was incurred.

"An agreement to give security may be void, and the debt continue as a legal obligation.

"From the escrow agreement it is plain that the dismissal of a criminal prosecution was the condition upon which the papers were to be delivered by Stokes; and the agreement to dismiss was the inducement—the consideration—for their execution and deposit with him.

"The agreement was contrary to public policy and void.

"The plaintiff was therefore entitled to have the note and trust deed cancelled, and the court erred in rendering judgment against him." A proper interpretation of the opinion in that case makes it controlling in the case at bar.

It is not claimed that the plaintiff in this case was indebted to the defendant company in any sense, or had knowledge of the alleged embezzlement of Bartle except as claimed by the defendant company at the time of this transaction. It would therefore be a singular sort of justice for this court to cancel the obligation of the alleged debtor and wrongdoer and to permit the defendant company to retain the money of the plaintiff. We find no principle of law by which such latter holding may be sustained.

Counsel for defendant bases his argument upon the following proposition: "The case as now presented to this court in plaintiff in error's opening brief is a plain case of attempted recovery of money paid to compound a felony." If this were a correct statement of the facts in this case, an entirely different proposition would be presented. But the admitted fact in this case is that the plaintiff did not pay to the defendant money to compound a felony, nor for any other purpose, nor at all. Assuming such incorrect premise, counsel then proceed to invoke the doctrine of *In pari delicto potior est conditio defend-*

*entis,* so frequently considered by this court and the Court of Appeals.

The doctrine is expressed in different form in the several cases, but in substance it is the same in all.   Counsel for defendant cite it and rely on the expression in *Branham v. Stallings,* 21 Colo. 211, as follows: " '*In pari delicto portior est conditio defendentis*',—'In equal guilt, the stronger is the situation of the defendant', is a maxim of the law, or as it is sometimes expressed, 'Where misconduct is mutual, the law will not lend its aid to either party.' This rule was not adopted for the benefit of defendants, but simply upon the grounds of public policy.   Subject to a few well known exceptions, the law is well established that where such a contract is executory the law will not aid either party to enforce its execution, and where it has been executed, or money paid in pursuance thereof, the law will not aid the party to recover back the amounts paid."

It will be noticed in that case, as in all similar cases cited, the money or consideration was voluntarily paid or delivered, and the action was to recover back that which was so voluntarily and actually delivered, or to enforce an executory contract.

In this case the check was not delivered in accordance with the agreement, but in violation of it, therefore without any authority at all, and without the knowledge or consent of the plaintiff, and in direct violation of the express pledge of the escrow holder, who was for such purpose the joint trustee of the parties.   How can it be said, then, that the delivery of the check was a voluntary delivery or a voluntary payment, so vital in the application of the doctrine relied on?   It can be no different in principle than if the check had been stolen from the possession of the plaintiff and delivered by the thief to the defendant corporation, which then cashed it.   Such circumstance would have constituted an equally voluntary payment as under the facts in the case at bar.

It is contended that the escrow agreement being void as in contravention of public policy, the plaintiff may not rely

upon its terms to establish the status of the parties showing the absence of the delivery of the check in question. While the escrow receipt is void and non enforceable, it is of itself the best evidence of that fact and is likewise the best evidence of the acts, intent and purposes of the parties, and in the absence of contrary evidence, is conclusive evidence of the fact that the check was not to be delivered to the defendant except upon the happening of a certain contingency, which the admitted allegations of the complaint show never happened. Hence the check in this case was not lawfully delivered and therefore not authorized by plaintiff to be delivered or paid. Therefore, the doctrine of "In pari delicto portior est conditio defendentis" cannot apply.

Our negotiable instrument law expressly provides that every contract on a negotiable instrument is incomplete and revocable until delivery of the instrument, for the purpose of giving effect thereto. This was likewise the rule at common law.

It is a settled principle of the law that until the performance of the condition of an escrow agreement, the title to land to be conveyed remains in the grantor, and further, that if the grantor dies before the happening of the certain event or performance of the condition, the title descends to his heirs subject only to the purchaser's interest. It follows, therefore, that an escrow given to the grantee or obligee by the depositary before the compliance with the conditions or before the happening of the event stipulated, passes no title and gives no right to the obligee. 16 Cyc. 578, 579. This doctrine was announced, in *Wolcott v. Johns*, 7 Colo. App. 360, 375, and it was there said: "The deed to the property, and the notes for its price, were placed in the hands of Mr. Butler to be held by him until the performance of a certain condition by Johns. Upon the performance of that condition, Butler was to deliver the deed to Wolcott and Henderson, and the notes to Johns, and in event of the refusal or impossibility of performance, it would have been his duty to return the papers to

the parties respectively from whom he received them. Until performance, the instruments were entirely ineffective, for any purpose; there was no conveyance and there was no obligation upon the notes; the estate with all its incidents remained in Johns; if he had died in the meantime it would have descended to his heirs; it was subject to attachment for his debts, and a creditor levying upon it would hold it in preference to the grantees named in the deed."

If we follow the rule that if in a case where parties enter into a forbidden contract, the law will leave the parties where it found them, then in this case, it found the plaintiff's check in the hands of an escrow holder, undelivered and without authority to deliver, and therefore not lawfully cashed or paid. The delivery and cashing of the check was solely through the unauthorized and willful wrong of the defendants, hence the plaintiff is entitled to recover from them for these wrongful acts. The law will not permit them to so take advantage of their own fraud.

It is true that the plaintiff placed herself in a position where she could be imposed on by another, but in such case the doctrine of *In pari delicto* has been expressly held by this court not to apply. *Branham v. Stallings, supra,* where it is said: "The exceptions cover cases of usurious contracts, marriage brokerage contracts, and the like, where the transactions are prohibited for the sake of protecting one set of men from another, the one from their condition or situation being liable to be imposed upon by the other, as in such cases the parties are not *in pari delicto,* and it is assumed that public policy will best be advanced by granting relief. 2 Pomeroy's Eq. Jur., sec. 941, and cases cited in note." But we are also convinced that the complaint alleges facts sufficient to constitute a charge that the check was obtained by duress, and was therefore without consideration and void.

The judgment is reversed with instruction to proceed in accordance with the views herein expressed.

Garrigues, C. J., and Denison, J., concur.

Denison, J., concurring specially.

Whether the check was delivered by the trustee in accordance with the contract seems to me immaterial, because, since the contract was void, such delivery was without authority whether according to the contract or not.

The question before us, however, has nothing to do with the delivery or non-delivery of the check by the trustee. The question is whether the delivery of the check to the trustee on the terms of the contract was such an unlawful act as to place plaintiff *in pari delicto* with the trustee and the D. T. & W. Co. If it was, she cannot recover, if not, she can, and the case should be reversed.

It is true that the parties to an unlawful agreement are ordinarily *in pari delicto,* but where one of them is brought into the delict by duress by the other the entry is not voluntary and so they are not *in pari delicto* and the maxim *potior est conditio defendentis* does not apply in favor of him who is guilty of such duress.

In the present case the threat of the criminal prosecution of plaintiff's partner to the ruin of plaintiff's business was duress, analogous to duress of goods, so that she cannot be said to have entered the unlawful transaction voluntarily. For the principles here involved see Judge Elbert's discussion of duress of goods in *Adams v. Schiffer,* 11 Colo. 15, 30-34, and cases cited, especially *Chase v. Dwinal,* 7 Me. 134.

For these reasons I think the case should be reversed.