**Thomas W. ITIN, Plaintiff–Appellee,**

v.

**BERTRAND T. UNGAR, P.C., and Bertrand T. Ungar, Defendants–Appellants.**

No. 96CA2255.

Colorado Court of Appeals,
Div. V.

Aug. 20, 1998.

As Modified on Denial of Rehearing
Dec. 17, 1998.

Certiorari Granted June 21, 1999.

Myer, Swanson, Adams & Wolf, P.C., Thomas J. Wolf, Denver, Colorado, for Plaintiff–Appellee

Birge & Mayers, P.C., Thomas D. Birge, Denver, Colorado; Gibson, Dunn & Crutcher, LLP, Gregory J. Kerwin, Jessica Lee, Denver, Colorado, for Defendants–Appellants

Opinion by Judge ROY.

Defendants, Bertrand T. Ungar (Ungar), and Bertrand T. Ungar, P.C., an attorney and his professional corporation, appeal from the judgment entered on jury verdicts finding them liable for conversion and awarding treble damages, attorney fees, and costs to plaintiff, Thomas W. Itin, pursuant to the Rights in Stolen Property statute, § 18–4–405, C.R.S.1997. We reverse that portion of the judgment awarding treble damages, attorney fees, and costs pursuant to § 18–4–405, and remand for further proceedings.

Plaintiff is a venture capitalist who agreed to invest in a corporation with another venture capitalist. The other investor introduced plaintiff to defendant Ungar, who performed legal services for plaintiff, the other investor, and some of their ventures.

After several years, the relationship between plaintiff and the other investor began to deteriorate. Nevertheless, plaintiff and the other investor agreed that plaintiff would purchase from the other investor's brother 113,331 shares in a company in which they both had an interest, for 69 cents a share. Plaintiff then wire transferred $78,193.39 into Ungar's trust account and Ungar was to act as escrow agent in the purchase and sale of the shares.

On the same day the money was transferred to Ungar, $50,000 was transferred by Ungar in two installments to two banks to the credit of a company of which plaintiff was chairman. Both Ungar and the other investor testified that this transfer was at the direction of plaintiff and was for the purpose of covering payroll checks which had been issued. Plaintiff maintains the transfer was made without his knowledge or authority.

Three days later, the balance of the fund was transferred into one of the other investor's corporate accounts. Evidence is conflicting as to the reason for this transfer, but under either version, the other investor benefited from the transfer. According to Ungar and the partner, this latter transfer was authorized by plaintiff. Again, plaintiff maintains the transfer was made without his knowledge or authority.

The purchase of the stock from the other investor's brother was never completed. No prosecution for theft was ever commenced

against Ungar or his professional corporation.

The jury found defendants liable for breach of fiduciary duty and conversion as to the latter transfer in the amount of $28,-198.39, and awarded $91,900 in economic damages, which included the amount transferred and consequential damages measured by the increase in value of the stock to be purchased, and $87,500 in non-economic damages. The jury also awarded $100,000 in punitive damages on the breach of fiduciary duty claim. The parties agreed that the punitive damages were duplicative of the treble damages awardable pursuant to § 18–4–405.

The trial court then combined the economic and non-economic damages for conversion in the total amount of $179,400, trebled them to $538,200, and awarded attorney fees and costs in the amount of $103,620.67, all pursuant to § 18–4–405. This appeal followed.

## I.

■ Defendants first contend that the trial court erred in awarding treble damages, attorney fees, and costs to plaintiff pursuant to § 18–4–405, the Rights in Stolen Property statute, based on the jury's finding of liability on the conversion claim. We agree.

■ Statutory construction is a matter of law to be decided by the court. *Fogg v. Macaluso*, 892 P.2d 271 (Colo.1995). In construing a statute, the court's first goal is to give effect to the General Assembly's intent in enacting the statute. In so doing, a court must look first to the plain language of the statute. *Farmers Group, Inc. v. Williams*, 805 P.2d 419 (Colo.1991).

Section 18–4–405 provides:

*All property obtained by theft, robbery, or burglary shall be restored to the owner, and no sale, whether in good faith on the part of the purchaser or not, shall divest the owner of his right to such property. The owner may maintain an action not only against the taker thereof but also against any person in whose possession he finds the property. In any such action, the owner may recover two hundred dollars or three times the amount of the actual damages sustained by him, whichever is greater, and may also recover costs of the action and reasonable attorney fees; but monetary damages and attorney fees shall not be recoverable from a good-faith purchaser or good-faith holder of the property.* (emphasis added)

Thus, § 18–4–405, located in the criminal code as part of the comprehensive theft statute, permits an owner to maintain an action to regain property obtained by theft, robbery, or burglary. *In re Marriage of Allen*, 724 P.2d 651 (Colo.1986).

In *In re Marriage of Allen, supra,* the supreme court held that § 18–4–405 could not form the basis for imposing a constructive trust on marital property that had been purchased with embezzled funds and awarded to the innocent spouse in a dissolution of marriage action. In so holding, the supreme court explained:

[The statute's] placement in the criminal code and its allowance of treble damages strongly suggest that section 18–4–405 was intended to serve primarily a punitive, rather than a remedial, purpose by depriving thieves and persons who buy and sell stolen goods of the immediate fruits of their criminal activities and by making such persons pay damages that by definition are three times greater than the amount necessary to compensate their victims.

*In re Marriage of Allen, supra,* 724 P.2d at 656.

■ The plain language of § 18–4–405, its purpose, and its location in the criminal code indicate that a victim of the crime of theft, robbery, or burglary may recover the property stolen and is entitled to treble damages, attorney fees, and costs, against the thief, robber, or burglar, or others who possess the property so obtained without the benefit of the enumerated affirmative defenses. Thus, for a plaintiff to recover treble damages, fees, and costs, under § 18–4–405, the original taker must, at a minimum, have been convicted of theft, burglary, or robbery. Our conclusion in this regard is consistent with previous cases applying § 18–4–405. See *In re Marriage of Allen, supra; Montoya v.*

*Grease Monkey Holding Corp.*, 883 P.2d 486 (Colo.App.1994), aff'd, 904 P.2d 468 (Colo. 1995).

Nevertheless, plaintiff urges that *Becker & Tenenbaum v. Eagle Restaurant Co.*, 946 P.2d 600 (Colo.App.1997) (*cert. denied*, May 8, 1998) supports the trial court's imposition of treble damages, attorney fees, and costs.

In that case, the defendant issued a check to plaintiff to cover its obligation under a settlement agreement. Plaintiff returned the check to defendant in order to have it certified. Instead of certifying the check, defendant closed and liquidated the business, and distributed the proceeds of the check to trade creditors. A division of this court affirmed the award of treble damages, attorney fees, and costs pursuant to § 18–4–405 on the basis of civil theft.

We recognize that here, as in *Eagle Restaurant*, the jury instruction for conversion tracked the elements of civil theft, which in turn tracked the criminal theft statute. However, the precise question presented here was not raised or addressed in *Eagle Restaurant*.

■ In our view, § 18–4–405 was not intended to subject every trustee, bailee, broker, or other fiduciary to treble damages and attorney fees should it find itself in a dispute with the owner as to the instructions, or lack of instructions, relating to an investment or other disposition of an asset. In addition, if the statute is applied to "civil theft" consistent with *Eagle Restaurant*, then claims under § 18–4–405 would likely supplant common law conversion claims in almost all instances, a result the General Assembly could not have contemplated or intended. To the extent *Eagle Restaurant* can be read as reaching a contrary conclusion, we decline to follow it.

Therefore, we hold that § 18–4–405 is not applicable here, and the award of treble damages, attorney fees, and costs pursuant to that statute cannot stand.

## II.

Defendants also contend that the trial court erred as a matter of law in refusing to enter judgment in their favor on the affirmative defense of release. We perceive no error.

At trial, defendants insisted that the construction of a release executed by plaintiff, which arguably released defendants from liability, was a question of fact for the jury to decide. The jury found in favor of plaintiff, concluding that in executing the release, plaintiff did not intend to release defendants from any liability.

■ On appeal, defendants contend that the trial court should have interpreted the release in their favor as a matter of law. They argued at trial, however, that the interpretation of the release was a question of fact for the jury, and the issue was submitted to the jury. Thus, we conclude that defendants cannot complain on appeal about an asserted error which they induced the trial court to commit. *See Motor Vehicle Division v. Castro*, 914 P.2d 517 (Colo.App.1996) (party cannot complain on appeal about that which it invited or injected into case); *Newland v. Holland*, 624 P.2d 933 (Colo.App.1981) (party cannot allege that its counsel's tactical decision at trial amounted to reversible error); *Millenson v. Department of Highways*, 41 Colo.App. 460, 590 P.2d 979 (1978) (parties are responsible for posture in which they place themselves and may not avoid consequences that flow therefrom on appeal).

## III.

■ Finally, we reject defendants' contention that the trial court erred in refusing to permit cross-examination of the plaintiff as to sanctions which had been imposed upon him by the Securities and Exchange Commission. The trial court ruled the evidence inadmissible as irrelevant, pursuant to CRE 401. Defendants now contend it was admissible pursuant to CRE 608(b)(attack on credibility based on a specific act of prior misconduct).

■ Defendants did not raise CRE 608(b) in the trial court as a basis for the admission of the evidence, and thus, they may not assert that rule as a basis of error here. When a proponent of evidence unsuccessfully seeks to admit the evidence on specified grounds at trial, that proponent may not on

appeal allege error in failing to admit the evidence on grounds which were not considered by the trial court. *See Russell v. First American Mortgage Co.*, 39 Colo.App. 360, 565 P.2d 972 (1977) (party who objected to evidence at trial as cumulative cannot argue on appeal that evidence was hearsay).

Accordingly, that portion of the judgment awarding treble damages, attorney fees, and costs pursuant to § 18–4–405 is reversed, and the cause is remanded for further proceedings including, if appropriate, entry of judgment on the jury's verdict on the breach of fiduciary duty claim together with punitive damages and costs pursuant to C.R.C.P. 54(b). The remainder of the judgment is affirmed.

TAUBMAN and VOGT, JJ., concur.