**EQUITEX, INC. and Henry Fong, Plaintiffs–Appellees,**

**v.**

**Bertrand T. UNGAR, Defendant–Appellant.**

**No. 01CA1253.**

Colorado Court of Appeals, Div. III.

July 5, 2002.

Rehearing Denied Aug. 22, 2002.

Certiorari Denied Jan. 13, 2003. *

---

\* Justice KOURLIS would grant as to the following issues:

Whether the court of appeals erred in determining that the verdict from a related litigation justified summary judgment on a claim for indemnification when Delaware Business Law provides for permissive indemnification for a director or agent who believes that his actions were in the best interests of the corporation and the issue of whether his actions were in the best interests of the corporation was not considered in the related litigation.

Whether the petitioner was entitled to rely on the respondent's promise of indemnification, in rela-

tion to the misrepresentation, nondisclosure, and fraud claims, because it was within the public policy of the Delaware indemnification statute, and he acted in accordance with instructions fron one of the respondent's in disbursing the monies.

Whether a jury verdict based on determination that a person acted wrongfully justifies a subsequent summary judgment on that person's claims for breach of indemnity contract and promissory estoppel on the specific issue of whether the person knew his conduct was wrongful.

Block Markus Williams, L.L.C., Gregory L. Williams, Donald J. Quigley, John F. Young, Denver, Colorado, for Plaintiffs–Appellees.

Bertrand T. Ungar, P.C., Bertrand T. Ungar, Denver, Colorado; Anne Whalen Gill, P.C., Anne Whalen Gill, Castle Rock, Colorado, for Defendant–Appellant.

Opinion by Judge DAVIDSON.

In this declaratory judgment action, defendant, Bertrand T. Ungar, appeals from the trial court's judgment finding that plaintiffs, Equitex, Inc. and Henry Fong, owe defendant no indemnification. We affirm.

In 1996, a judgment was entered against defendant in favor of Thomas W. Itin on claims under the Rights in Stolen Property statute, § 18–4–405, C.R.S.2001. The claims were based on defendant's involvement in a 1990 stock transaction in which Fong, acting for his brother, sold Itin stock in a company called Roadmaster; the purchase price was wired to defendant's trust account; and the stock was not delivered. The jury found that defendant's transfer of a portion of the funds to an account controlled by Fong constituted theft and a breach of fiduciary duty. The lawsuit did not concern a concurrent sale of Roadmaster stock from Equitex to Itin. At the time of the stock sale, Equitex held a controlling interest in Roadmaster, Fong was chairman and president of Roadmaster and president of Equitex, and Itin was a director of Roadmaster. At various times, not precisely defined in the record, defendant, an attorney, was a director of both Equitex and Roadmaster.

Before filing his lawsuit, Itin had resigned from Roadmaster and entered into a settlement agreement with Fong and Equitex, which, inter alia, covered the stock transaction and was applicable to agents of Equitex. Defendant argued that the settlement barred Itin's claims against him because he had acted as an agent of Equitex in the stock transaction, but the jury found to the contrary. *See Itin v. Bertrand T. Ungar, P.C.,* 978 P.2d 142 (Colo.App.1998), *aff'd in part and rev'd in part,* 17 P.3d 129 (Colo.2000).

After judgment was entered against him in the Itin case, defendant sought indemnification from plaintiffs and Roadmaster for the amount of that judgment and certain other costs. He alleged that Fong, on behalf of himself, Roadmaster, and Equitex, orally promised to indemnify defendant for the Itin litigation both when that litigation began and again after the judgment entered. Roadmaster posted defendant's appeal bond in *Itin* with a reservation of rights. Subsequently, Roadmaster's obligation was transferred to Equitex.

Plaintiffs filed this action, pursuant to C.R.C.P. 57, seeking a declaration that they

owed defendant no indemnification. Defendant filed counterclaims for breach of indemnity contract, promissory estoppel, breach of fiduciary duty, fraud, nondisclosure, and negligent misrepresentation.

The trial court granted plaintiffs' motion for summary judgment on defendant's counterclaims and then entered judgment in favor of plaintiffs. It determined, inter alia, that the claim for breach of indemnity contract failed based on public policy considerations; the promissory estoppel claim failed because of defendant's intentional conduct; the fiduciary duty claim failed because plaintiffs, as client or corporation, owed no such duty to defendant, as their attorney or director; and the remaining claims failed because defendant did not reasonably or justifiably rely on statements made by plaintiffs. Defendant appeals.

■ Review of a grant of summary judgment is de novo. *Aspen Wilderness Workshop, Inc. v. Colo. Water Conservation Bd.*, 901 P.2d 1251 (Colo.1995). Summary judgment is appropriate if no issues of material fact remain unresolved and the moving party is entitled to judgment as a matter of law. *See* C.R.C.P. 56(c); *Churchey v. Adolph Coors Co.*, 759 P.2d 1336 (Colo.1988).

## I.

Defendant contends that the trial court erred in granting summary judgment on his claims for breach of indemnity contract and promissory estoppel. Specifically, he asserts that he did not act wrongfully in the stock transaction and contends that plaintiffs' actions should prevent them from raising a public policy defense and that fairness requires enforcement of the promise of indemnity under a promissory estoppel theory. We disagree.

## A.

■ Defendant concedes that he is bound by all findings on issues actually and necessarily decided in the Itin litigation. However, he also asserts that he did not act wrongfully, that he "merely acted as a point of transfer for the funds, following the instructions of Fong and Itin in doing so," and that

the jury made no finding that he acted intentionally. We disagree.

During the Itin trial, the parties disagreed as to whether Itin was entitled to proceed under the Rights in Stolen Property statute or was, instead, limited to a claim of civil conversion. The jury instructions apparently were drafted to permit this issue to be resolved after the jury returned its verdict. Accordingly, the jury was nominally instructed as to the elements of the tort of conversion, but those elements were defined to encompass the definition of criminal theft necessary for a Rights in Stolen Property claim. Thus, the jury's verdict for Itin on the conversion claim included a finding that defendant knowingly exercised control over Itin's property, without authorization, and "with intent to permanently deprive [Itin] of the use or benefit of the thing of value."

Further, the jury returned a verdict for Itin on his breach of fiduciary duty claim and awarded punitive damages. The jury was instructed that:

A fiduciary relationship exists whenever a lawyer (trustee) accepts funds belonging to another (the beneficiary) pursuant to terms of an agreement and deposits them in his trust account where he has a legal power to affect the interests of the beneficiary.

A lawyer when acting as a trustee owes the beneficiary the following duties: 1. To keep the beneficiary of the trust reasonably informed of the trust and its administration; 2. Upon reasonable request to give a statement of the accounts of the trust annually and on termination of the trust; 3. To maintain trust account records and provide copies of them to the beneficiary on demand; 4. To follow the terms of the escrow agreement in disposing of the funds; 5. To not transfer the funds without authorization of the beneficiary.

Although the punitive damages ultimately were set aside as duplicative of the Rights in Stolen Property damages, nonetheless, based on the instructions, the jury indeed found that defendant's breach of fiduciary duty was "attended by circumstances of fraud or malice or willful and wanton conduct."

Thus, defendant's argument to the contrary notwithstanding, the jury found that he had acted wrongfully and intentionally in the stock transaction.

### B.

■ Defendant contends that, because Fong received Itin's funds without transferring the stock in return and allegedly engaged in self-dealing transactions with his companies, it would be "hypocritical and unfair" to allow Fong to raise public policy as a bar to defendant's contract and promissory estoppel claims. Defendant also contends that plaintiffs waived any public policy objections by participating, in various degrees, in the Itin litigation. We disagree.

■ Public policy prohibits "indemnifying a party for damages resulting from intentional or willful wrongful acts." *Bohrer v. Church Mut. Ins. Co.*, 12 P.3d 854, 856 (Colo. App.2000); *see also Metro. Life Ins. Co. v. Roma*, 97 Colo. 493, 496, 50 P.2d 1142, 1143 (1935)("A promise to indemnify another for doing a private wrong or for committing a public crime is against public policy, and is void in law."); *cf.* § 13–50.5–102(3), C.R.S. 2001 ("no right of contribution in favor of any tortfeasor who has intentionally, willfully, or wantonly caused or contributed to the injury"). *Greater Service Homebuilders' Investment Ass'n v. Albright*, 88 Colo. 146, 293 P. 345 (1930), indicates that this prohibition applies only to some torts. However, the section of Ruling Case Law to which it cites indicates, inter alia, that a promise to indemnify for a tort is valid "unless it is shown that the promisee knew the act to be a [tort.]" See 6 R.C.L., p. 726, § 130.

■ A court will not enforce a contract that violates public policy even if the failure to do so is "unfair" to one of the parties: "Countless instances might be cited where because of the refusal to enforce contracts which are against public policy one of the parties is left in a peculiarly advantageous position, or the contrary. With that fact the courts do not concern themselves." *Metro. Life Ins. Co. v. Roma, supra*, 97 Colo. at 497, 50 P.2d at 1143; *see also Potter v. Swinehart*, 117 Colo. 23, 28, 184 P.2d 149, 151–52

(1947)(the court leaves the parties where it finds them; quoting Restatement of Contract § 598 cmt. a, "When relief is denied it is because the plaintiff is a wrongdoer, and to such a person the law denies relief. . . . The court's refusal is not for the sake of the defendant, but because it will not aid such a plaintiff.").

■ Moreover, neither party may waive objections based on illegality or public policy, and equitable doctrines such as promissory estoppel may not be used to enforce an agreement in favor of a wrongdoer. *See Menzel v. Niles Co.*, 86 Colo. 320, 324, 281 P. 364, 365 (1929)("A contract which is contrary to public policy is void because it is contrary to public policy, and neither party to the contract is estopped from questioning it merely because the other party has parted with a property right or rendered service in reliance upon it."); *see also Topro Servs., Inc. v. McCarthy Western Constructors, Inc.*, 856 F.Supp. 1461, 1466 (D.Colo.1994)("The defenses of waiver and estoppel cannot be invoked against an agreement which is void as against public policy.")(applying Arizona law); *Arguelles v. Ridgeway*, 827 P.2d 553 (Colo.App.1991)(equitable remedies are subject to the principle that a party may not benefit from his or her wrongful acts).

Thus, regardless of plaintiffs' level of culpability, the jury's finding that defendant acted wrongfully and intentionally precludes an indemnity remedy under either a contract or promissory estoppel theory.

### II.

Defendant also contends that he is entitled to indemnification based on the Equitex bylaws. The trial court denied defendant's motion to amend his complaint to add this specific claim, noting that "[d]efendant has had ample time to seek amendment." However, the court addressed the bylaws issue in its summary judgment ruling, and both parties have addressed it in their briefs. Therefore, we will consider the issue.

The Equitex bylaws provide that "[t]he corporation shall indemnify its officers, directors, employees and agents to the extent permitted by the General Corporation Law

of Delaware." The latter provides, inter alia, that a corporation has the power to indemnify, against expenses and judgments, a person who is sued by reason of the fact that he or she was a director or agent of the corporation if:

> the person acted in good faith and in a manner the person reasonably believed to be in or not opposed to the best interests of the corporation.... The termination of any action, suit or proceeding by judgment ... shall not, of itself, create a presumption that the person did not act in good faith and in a manner which the person reasonably believed to be in or not opposed to the best interests of the corporation.

Del.Code Ann. tit. 8, § 145(a) (2001).

Defendant contends that he was acting in good faith when he transferred the funds and is therefore entitled to indemnification. He relies on the language providing that the termination of any action by judgment "shall not, of itself, create a presumption that the person did not act in good faith" and contends that the trial court erred in concluding that his actions were not taken in good faith as a matter of law. We disagree.

■ The Delaware Code provides for mandatory and permissive indemnification. If a director or agent is successful on the merits in an action, indemnification is mandatory. See Del.Code Ann. tit. 8, § 145(c) (2001). If, however, the director or agent is not successful on the merits, then indemnification is permissive, and the corporation may provide indemnity only if the director or agent acted in good faith and in the best interests of the corporation. See § 145(a). The good faith requirement is related to the duty of loyalty a director or agent owes to the corporation. See Waltuch v. Conticommodity Servs., Inc., 88 F.3d 87 (2d Cir.1996). Thus, good faith toward the corporation is the determinative issue. See Biondi v. Beekman Hill House Apt. Corp., 94 N.Y.2d 659, 709 N.Y.S.2d 861, 731 N.E.2d 577 (2000).

■ Defendant is correct that a party's liability for a tort against a third person is not necessarily inconsistent with good faith. See, e.g., Restatement (Second) of Agency § 439 cmt. g (1958)("[A] principal who reasonably believes that he is entitled to the possession of land or chattels is under a duty of indemnity to an agent who innocently obeys orders in taking possession and is made liable for trespass or conversion to the one entitled to possession."). In some cases, whether the defendant acted in good faith toward the corporation may be a question of fact.

■ Here, however, defendant was not found liable for ordinary conversion, but for intentional theft, and the jury also found that defendant's breach of fiduciary duty was "attended by circumstances of fraud or malice or willful and wanton conduct." The intentional and willful nature of defendant's actions precludes a finding that he acted in good faith. See Biondi v. Beekman Hill House Apt. Corp., supra, 94 N.Y.2d at 667, 709 N.Y.S.2d 861, 731 N.E.2d at 581 ("Because the underlying ... judgment establishes that [defendant's] acts were committed in bad faith, [defendant] is not entitled to indemnification and cannot relitigate the good faith versus bad faith issue here ...."); see also In re Landmark Land Co., 76 F.3d 553, 565 (4th Cir.1996)("An agent who has intentionally participated in illegal activity or wrongful conduct against third persons cannot be said to have acted in good faith, even if the conduct benefits the corporation."); McLean v. Alexander, 449 F.Supp. 1251 (D.Del.1978)(indemnity under § 145 is subject to the general public policy against indemnifying a party for his intentional wrongdoing), rev'd on other grounds, 599 F.2d 1190 (3d Cir.1979); cf. People v. Kazmierski, 25 P.3d 1207, 1214 (Colo.2001)("False statements, either intentionally or recklessly made, are the antithesis of · good faith."); Golden Press, Inc. v. Rylands, 124 Colo. 122, 235 P.2d 592 (1951)("willful and intentional" actions are distinct from those taken in good faith).

Thus, the trial court did not err in concluding that defendant's intentional conduct demonstrated a lack of good faith that, as a matter of law, precluded indemnification under the Equitex bylaws.

### III.

Defendant's counterclaim for breach of fiduciary duty alleges that Fong and Equitex had a fiduciary duty to include him within the provisions of the settlement agreement with Itin and that they breached that duty by "placing their interests ahead of [defendant's]," "[r]ather than risk losing a settlement for themselves by clearly making [defendant] a party to the settlement agreement." The trial court noted that, because defendant was a director of Equitex and provided legal services and business advice to both Equitex and Fong, he owed fiduciary duties to them as his corporation and client. The court determined that plaintiffs owed no fiduciary duties to defendant as a matter of law because fiduciary duties are not mutual.

Defendant now contends that plaintiffs owed him a fiduciary duty arising out of a confidential relationship based upon "his long association with Equitex and Fong as their business advisor and upon [his] close friendship with Fong for many years," and he thus contends that whether plaintiffs owed him a fiduciary duty is a jury question. We disagree.

> [I]n order to establish a breach of a fiduciary duty arising from a confidential relationship, there must be proof, among other things, that (1) either the reposing of trust and confidence in the other party was justified, or the party in whom such confidence was reposed either invited, ostensibly accepted, or acquiesced in such trust; (2) the alleged trustee assumed a primary duty to represent the other party's interest in the subject of the transaction; (3) the nature and scope of the duty that arose by reason of the confidential relationship extended to the subject matter of the suit; and (4) that duty was violated, resulting in damage to the party reposing such confidence.

*Jarnagin v. Busby, Inc.*, 867 P.2d 63, 67 (Colo.App.1993).

Here, there is no evidence that plaintiffs assumed a primary duty to represent defendant's interests in the settlement with Itin, that any duties arising out of the alleged confidential relationship extended to the settlement, or that defendant was damaged as a result of the confidence he placed in plaintiffs.

To the contrary, the settlement was part of Itin's larger agreement with plaintiffs to separate their business interests. Although the settlement specifically covered the stock purchase from Fong's brother, it is not reasonable to assume, based only on defendant's allegations of mutual trust and friendship, that plaintiffs agreed to act solely for defendant's benefit in all their business transactions. *See Bock v. Brody*, 870 P.2d 530, 533 (Colo.App.1993)("the existence of a confidential relationship, without more, is insufficient to establish a fiduciary relationship"), *aff'd in part and rev'd in part on other grounds*, 897 P.2d 769 (Colo.1995).

Defendant does not allege that plaintiffs induced him to believe that they would protect his interests in the settlement. Nor does he allege that, but for his relaxed vigilance, he would have taken action to ensure that he was included in the settlement. Defendant alleges no basis, other than his friendship, for any right to intervene or be included in the negotiations between Itin and plaintiffs.

Further, although the release covered claims against, inter alia, agents, directors, and attorneys of Equitex, the jury in the Itin case found that Itin did not intend to release defendant from any liability. *See Itin v. Bertrand T. Ungar, P.C.*, *supra*, 978 P.2d at 145.

And, while defendant asserts that the indemnity agreement was not reduced to writing because of the fiduciary relationship, that agreement would be unenforceable even if it were in writing.

Therefore, regardless whether defendant was acting as an attorney or director for plaintiffs, the trial court correctly determined that plaintiffs owed defendant no fiduciary duty. Thus, summary judgment on defendant's breach of fiduciary duty claim was proper.

## IV.

Defendant's counterclaims for misrepresentation, nondisclosure, and fraud are not specific, but on appeal he alleges that (1) Fong's promises to indemnify him were made with an intent not to perform and were therefore fraudulent and (2) plaintiffs should have disclosed to him that Fong intended to accept Itin's funds without delivering the stock and that Equitex might not agree to indemnify him. Defendant further alleges that plaintiffs' promises of indemnity induced him not to name them as third-party defendants in the Itin suit. Defendant's alleged damages for these tort claims are the same indemnity for the Itin litigation that he seeks under contract and equitable theories. Defendant contends that the trial court erred in dismissing these counterclaims because the reasonableness of his reliance on the statements is a question of fact. We disagree.

The trial court correctly determined that defendant "cannot be justified in relying upon an alleged promise which is contrary to public policy, and cannot be justified in acting on the concealment of another with actions which were wanton and intentionally wrongful." As discussed, a contract to indemnify a party for intentional wrongdoing is against public policy, and the court will leave the parties as it finds them, even if one party has detrimentally relied upon the contract. *See also* Restatement (Second) of Contracts § 198 (1981)(no restitution for performance rendered under promise that is unenforceable where party is not excusably ignorant of the facts or is equally at fault with the party from whom he or she is seeking restitution); *cf. Galvin v. Stokes,* 68 Colo. 376, 191 P. 117 (1920)(party who entered into contract under duress entitled to restitution because not equally at fault).

Further, no information that plaintiffs provided or withheld relieved defendant of his duty to disburse Itin's funds according to Itin's directions, which the jury in the Itin case found defendant had breached. And, plaintiffs' alleged fraud or misrepresentation regarding their intent to indemnify does not lessen defendant's responsibility for his intentional wrong, and he is therefore not entitled to restitution for performance or detrimental reliance under the alleged indemnity agreement. Thus, whether plaintiffs would have been found liable for any of Itin's damages if they had been joined in that action has no bearing on defendant's claims here. Additionally, we note, defendant is not seeking a determination of his relative fault pursuant to § 13–21–111.5, C.R.S.2001, but is seeking total indemnification for his own wrongdoing.

Based on our disposition of this matter, we need not address the remaining issues raised by the parties.

The judgment is affirmed.

KAPELKE and PIERCE **, JJ., concur.

---

** Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S.2001.