24CA1008 Home Street v Castle Rock Senior 06-04-2026

COLORADO COURT OF APPEALS

Court of Appeals No. 24CA1008
Douglas County District Court No. 22CV30760
Honorable Andrew Baum, Judge

Home Street Operations, LLC; Madison Creek Partners, LLC; Home Street
Holdings, LLC; and Madison Partners Holdings, LLC,

Plaintiffs-Appellees,

v.

Castle Rock Senior Living, LLC; Solterra at Castle Rock RE, LLC; Stephen
Jorgenson; and Solterra Holdings LLC,

Defendants-Appellants.

JUDGMENT REVERSED AND CASE
REMANDED WITH DIRECTIONS

Division I
Opinion by JUDGE LUM
J. Jones and Meirink, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced June 4, 2026

Womble Bond Dickinson (US) LLP, Kenneth F. Rossman, IV, Kendra N.
Beckwith, Denver, Colorado, for Plaintiffs-Appellees

Spencer Fane LLP, Troy R. Rackham, Jacob F. Hollars, Denver, Colorado, for
Defendants-Appellants

¶ 1    Plaintiff, Melissa Schwartz, sued two groups of defendants over the sale of a medical care facility.  A jury found parties from both groups of defendants liable on all of Schwartz's claims.

¶ 2    Defendants Home Street Operations, LLC (HSO); Home Street Holdings, LLC (HSH); Madison Creek Partners, LLC (MCP); and Madison Partners Holdings, LLC (MPH) (collectively, the Madison parties) asserted cross-claims against defendants Stephen Jorgenson; Solterra at Castle Rock RE, LLC (SCRRE); Castle Rock Senior Living, LLC (CRSL); and Solterra Holdings LLC (collectively, the Jorgenson parties).  The Madison parties contended that the Jorgenson parties had breached indemnity provisions in four contracts, causing the Madison parties to incur damages in the form of (1) attorney fees expended in defending against Schwartz's claims and (2) the judgments entered against two of the Madison parties on those claims.

¶ 3    The Jorgenson parties appeal the district court's judgment on the cross-claims, which ordered them to partially indemnify the Madison parties.  We reverse and remand for further proceedings.

## I.    Background

¶ 4    Stephen Jorgenson is the owner, operator, and manager of SCRRE, CRSL, and Solterra Holdings.  CRSL operated the medical care facility out of a building owned by SCRRE.

¶ 5    Because CRSL couldn't operate the facility successfully, it entered into an "Interim Management Agreement" with MCP under which MCP agreed to provide operational assistance in running the facility.

¶ 6    In the Interim Management Agreement, CRSL agreed to indemnify MCP "against any and all demands, claims, causes of action . . . losses, liabilities . . . judgments, and expenses (including, without limitation, reasonable attorneys' and other professionals' fees and court costs)" stemming from the care facility.

¶ 7    A year later, CRSL entered into a "Consulting Agreement" with HSO regarding the operation of the facility.  In the Consulting Agreement, CRSL agreed to indemnify HSO and its affiliates "for, from and against any and all claims, losses, costs, damages, and liabilities, including reasonable attorneys' fees, incurred, caused, or occasioned by, in connection with or arising out of the negligent or willful acts or omissions of [CRSL]."

¶ 8    Several months later, SCRRE leased the care facility to HSO. The parties entered into an "Operating Lease" in which SCRRE agreed to indemnify HSO "from and against any and all claims . . . losses, liabilities, damages," including "attorney's fees, costs and expenses" resulting from a "breach by [SCRRE] in the performance of any of its . . . obligations."

¶ 9    After HSO took over the care facility's operations, Schwartz, as the conservator for a patient at the care facility, filed a lawsuit against CRSL for injuries the patient sustained while being treated there. Schwartz obtained a judgment of approximately $5 million against CRSL (Schwartz judgment). CRSL didn't pay the judgment.

¶ 10    Some time later, HSO and HSH engaged in discussions with Jorgenson to purchase the care facility. At some point during the negotiations, HSO and HSH learned of the outstanding Schwartz judgment. The parties entered into an "Indemnification Agreement and First Amendment to the Purchase and Sale Agreement"

(indemnification agreement) to protect HSO and HSH if the Jorgenson parties[1] failed to satisfy the judgment.

¶ 11    The indemnification agreement states in relevant part as follows:

- If HSO or HSH "is threatened to be made a party to, or is otherwise involved in . . . any Proceeding relating to the [Schwartz judgment], [HSO or HSH] shall be completely and fully indemnified by [the Jorgenson parties] against all Expenses and Liabilities incurred, suffered or paid by [HSO or HSH] in connection with such Proceeding."

- "[The Jorgenson parties] shall defend and hold harmless [HSO or HSH] in any Proceeding related to the [Schwartz judgment] and shall take no position — legal or otherwise — in compromise or against this duty to defend [HSO or HSH]."

- "[The Jorgenson parties] shall and hereby [do] indemnify and hold harmless [HSO or HSH] against all Expenses,

---

[1] The indemnification agreement includes "[CRSL], Steve Jorgenson, and their directors, officers, Subsidiaries, affiliates, members, assigns and any Entity controlled directly or indirectly by them" as the "Debtors, Seller, or Indemnitor."

judgments, penalties, fines and amounts paid in settlement actually and reasonably incurred by [HSO or HSH] or on [their] behalf relating to the [Schwartz judgment]."

- "In the event that any right accrues hereunder, including enforcement of a right under this Agreement, all Expenses . . . shall be advanced and paid by [the Jorgenson parties] including but not limited to retainer fees, deposit fees, attorney's fees, and other Expenses."

¶ 12    In addition to these indemnification obligations, the Jorgenson parties agreed that they "shall not enter into any settlement of any Proceeding related to [the Schwartz judgment] unless such settlement provides for a full and final release of all claims asserted against" HSO and HSH (the settlement provision).

¶ 13    In September 2022, the parties closed on the sale of the care facility.  The next month, Schwartz sued the Jorgenson parties and the Madison parties over the sale.  Schwartz generally alleged that the Jorgenson parties conspired with the Madison parties to sell the care facility so that the Jorgenson parties could avoid paying the Schwartz judgment.

¶ 14    As relevant here, Schwartz brought claims for (1) violation of

the Colorado Uniform Fair Trade Act (CUFTA); (2) violation of the

Colorado Organized Crime Control Act (COCCA); (3) conspiracy to

violate COCCA; and (4) civil conspiracy.

¶ 15    Just before trial, Schwartz agreed to settle the claims against

Jorgenson and Solterra Holdings for $2 million and, in exchange,

dismissed those claims with prejudice.[2]  As part of the settlement,

SCRRE and CRSL remained parties to the lawsuit as "nominal"

defendants, but Schwartz agreed not to enforce any judgment she

might obtain against them.

¶ 16    During trial, Schwartz voluntarily dismissed the claims

against MPH and HSH.  All of Schwartz's claims were tried against

the remaining defendants — CRSL, SCRRE, MCP, and HSO.

¶ 17    The jury returned a unanimous verdict in Schwartz's favor.  As

to MCP and HSO, the damages awards and judgments were entered

as follows:

---

[2] Bridgewater Castle Rock ALF, LLC, another company owned and
operated by Jorgenson, also settled with Schwartz and was
dismissed from the case.

| Claim | Damages Awarded by Jury | Punitive Damages Awarded by Jury | Judgment Entered by District Court |
|---|---|---|---|
| CUFTA Violation | $4,870,000 | | $7,305,000 — one and one-half times the base damages amount of $4,870,000. *See* § 38-8-108(1)(c). |
| COCCA Violation | $500,000 | | $500,000 — folded into the judgment for conspiracy to violate COCCA because the award represented the jury's "determination that $500,000 was the appropriate [amount of] damages for both COCCA related claims." |
| Conspiracy to Violate COCCA | $500,000 | | $1,500,000 — three times the base damages amount of $500,000. *See* § 18-17-106(7). |
| Civil Conspiracy | | $1,500,000 | $1 — reduced to nominal damages because the jury's award was duplicative of the COCCA and COCCA conspiracy damages. |

¶ 18 After the jury trial, the Madison parties' cross-claims were tried to the court. The court ruled that (1) the Interim Management Agreement, the Consulting Agreement, the Operating Lease, and the

7

majority of the indemnification agreement,[3] were valid and enforceable contracts that the Jorgenson parties breached; (2) the Jorgenson parties breached the settlement provision in the indemnification agreement; (3) the indemnification provisions in all four agreements were enforceable as to the damages awarded by the jury for the CUFTA and COCCA violations but were unenforceable as to the damages awarded on the conspiracy claims because such damages were punitive; and (4) MCP and HSO had to pay the CUFTA and COCCA judgments to Schwartz before seeking indemnification from the Jorgenson parties. The Madison parties also moved for attorney fees and costs under the indemnification provisions of the various agreements.

¶ 19     The Jorgenson parties opposed the attorney fees motion, arguing that the Madison parties were barred from collecting attorney fees because they didn't present evidence of those fees as damages in the jury trial. The Jorgenson parties also requested a hearing on the reasonableness of the fees.

---

[3] The district court concluded that certain sections of the indemnification agreement were unenforceable. No party appeals that portion of the district court's judgment.

¶ 20    The court ruled that an evidentiary hearing was unnecessary and issued an order awarding attorney fees of $657,487.50 to HSO, HSH, and MCP related to work done by two law firms. The district court denied all fees associated with work by three other law firms.

¶ 21    While this appeal was pending, the Madison parties sought a limited remand to further amend the judgment to include amounts that HSO and MCP had paid to Schwartz on the judgment entered on the jury verdicts. This court ordered a limited remand. On remand, the district court ordered the Jorgenson parties to pay $6,010,488.67 to HSO and MCP.

¶ 22    The Jorgenson parties make three arguments on appeal. First, they argue that the district court erred by partially enforcing the indemnification provisions because public policy prohibits indemnification for acts that are intentional, willful, and in bad faith. Second, the Jorgenson parties argue that even if the court didn't err in that regard, it nonetheless erred by awarding attorney fees to HSO, HSH, and MCP because those parties were required to prove fees and costs as damages during the jury trial. Third, the Jorgenson parties argue that even if the Madison parties weren't required to prove fees and costs as damages at trial, the district

court erred by declining to hold a hearing on the reasonableness of the fees before entering its order. We address each argument in turn.

## II. Indemnification for CUFTA and COCCA Violations

¶ 23 The Jorgenson parties contend that the district court erred by partially enforcing the indemnification provisions because HSO's and MCP's actions underlying Schwartz's lawsuit were intentional or willful. We agree.

### A. Standard of Review and Generally Applicable Law

¶ 24 Whether a contract provision is void as against public policy is a question of law that we review de novo. *Bailey v. Lincoln Gen. Ins. Co.*, 255 P.3d 1039, 1045 (Colo. 2011).

¶ 25 In Colorado, "[p]ublic policy prohibits 'indemnifying a party for damages resulting from intentional or willful wrongful acts.'" *Equitex, Inc. v. Ungar*, 60 P.3d 746, 750 (Colo. App. 2002) (citation omitted). "A court will not enforce a contract that violates public policy even if the failure to do so is 'unfair' to one of the parties." *Id.*

¶ 26 When a party commits multiple forms of misconduct, but only some of the misconduct is intentional or willful, enforcement of a contractual indemnification provision turns on whether the willful

10

misconduct is separable from the conduct committed at a different time or with a lesser mens rea. *Cf. Bohrer v. Church Mut. Ins. Co.*, 965 P.2d 1258, 1264 (Colo. 1998) ("When the covered conduct causes injury resulting in damages, and the excluded conduct has not occurred in close temporal and spatial relationship to the covered conduct, coverage is not defeated by the exclusion.").

### B.     CUFTA

#### 1.     Applicable Law

¶ 27    CUFTA functions to protect an unsecured creditor by voiding a debtor's transfer of assets to a third-party transferee when such transfer renders the debtor insolvent or otherwise unable to pay the creditor. *CB Richard Ellis, Inc. v. CLGP, LLC*, 251 P.3d 523, 529 (Colo. App. 2010). A transfer is voidable when a debtor "actual[ly] inten[ded]" to "hinder, delay, or defraud" a creditor. § 38-8-105(1)-(2), C.R.S. 2025; *id.* at cmts. 1, 5; § 38-8-106, C.R.S. 2025; *see West v. Roberts*, 143 P.3d 1037, 1041 (Colo. 2006) (official comments to a statute are relevant to its interpretation); *CB Richard Ellis*, 251 P.3d at 529 (discussing constructive fraud under sections 38-8-105(1)(b) and -106).

¶ 28     The culpability of a transferee is not essential to show that a transfer is voidable under CUFTA. *CB Richard Ellis*, 251 P.3d at 532. However, a transfer is not voidable against a transferee who took title to the transferred assets "in good faith and for a reasonably equivalent value." § 38-8-109(1), C.R.S. 2025.

¶ 29     If a creditor shows that a transfer is voidable under CUFTA, the creditor may receive "a judgment for one and one-half the value of the asset transferred" against the debtor (exemplary damages). § 38-8-108(1)(c), C.R.S. 2025. Additionally, a "judgment for the value of the asset transferred" may be entered against "[t]he first transferee of the asset" regardless of the transferee's intent. § 38-8-109(2)(a)(I). However, exemplary damages may not be entered against a transferee unless the transferee also acts with "actual intent to hinder, delay, or defraud [the] creditor." *Id.*; § 38-8-105(1)(a).

### 2.     Analysis

¶ 30     Recall that the jury awarded Schwartz approximately $4.8 million in damages with respect to its verdict on the CUFTA violation claim (base CUFTA damages). The court concluded that the indemnification provision was enforceable as to the base CUFTA

damages because they weren't punitive in nature. We agree with the Jorgenson parties that the court erred because (1) it focused on the type of damages awarded rather than whether HSO's and MCP's actions related to the sale of the care facility were intentional or willful, and (2) its conclusion regarding indemnification is inconsistent with its other findings and conclusions regarding HSO's and MCP's bad faith.

¶ 31    First, the district court awarded exemplary damages against HSO and MCP — the transferees in the sale of the care facility — under section 38-8-108(1)(c). Such damages could be entered against HSO and MCP only upon a finding that they acted intentionally or in bad faith related to the facility transfer. *See* § 38-8-108(1)(c) (Exemplary damages can't be entered against "a person other than the debtor unless that person also acts with wrongful intent as defined in section 38-8-105(1)(a)."); § 38-8-105(1)(a) (defining wrongful intent as an "actual intent to hinder, delay, or defraud any creditor of the debtor"). HSO and MCP don't appeal the district court's imposition of exemplary damages or its underlying finding.

¶ 32    In a similar vein, the district court also imposed joint and several liability against CRSL, HSO, and MCP with respect to the CUFTA claim.  Joint and several liability can only be imposed on "two or more persons who consciously conspire and deliberately pursue a common plan or design to commit a tortious act." § 13-21-111.5(4), C.R.S. 2025.  Thus, the court necessarily found that HSO and MCP "consciously conspire[d] and deliberately pursue[d] a common plan or design" to violate CUFTA — in other words, it found that the violation was intentional.  *See id.*  MCP and HSO don't appeal the district court's imposition of joint and several liability or its underlying finding.

¶ 33    In sum, although the base CUFTA damages aren't punitive in nature, the court found that MCP's and HSO's participation in the CUFTA violation was intentional.  Accordingly, the court erred by enforcing the indemnification provisions of the agreements as to the base CUFTA damages.  *See Equitex*, 60 P.3d at 750 (courts won't enforce contracts that violate public policy).

## C.    COCCA

¶ 34    The jury found MCP and HSO liable for violating COCCA, awarding Schwartz $500,000 in damages on that claim (base

14

COCCA damages). The jury also found all defendants liable for conspiracy to violate COCCA and awarded $500,000 in damages on that claim. The district court concluded (and the parties don't dispute) that the COCCA and COCCA conspiracy claims involved the same wrongful acts and that the verdict indicated the jury's intent to award a total of $500,000 for both COCCA claims. The court then trebled the jury's damages award and entered judgment for $1,500,000. *See* § 18-17-106(7), C.R.S. 2025.

¶ 35    As with the CUFTA claim, the district court determined that the indemnification provision was only enforceable as to the base COCCA damages of $500,000. The Jorgenson parties contend that any enforcement of the indemnification provision is prohibited because the HSO and MCP willfully violated COCCA. We agree.

1.    Applicable Law

¶ 36    COCCA imposes civil liability on a defendant who commits at least two racketeering crimes in furtherance of the defendant's association with an enterprise. §§ 18-17-103(3), -104, -106, C.R.S. 2025. Any person injured by a COCCA violation "shall have a cause of action for threefold the actual damages sustained." § 18-17-106(7).

15

## 2.     Analysis

¶ 37     Jury Instruction No. 22 informed the jury that, for Schwartz to recover on the COCCA claim against MCP and HSO, she had to prove that "[MCP] and/or [HSO] participated in the [care facility] through a pattern of racketeering activity."

¶ 38     The jury also received the following instruction for conspiracy to violate COCCA:

> For [Schwartz] to recover from [MCP] and/or [HSO] on her claim of Conspiracy to Violate [COCCA], you must find that all of the following have been proved:
>
> 1. A person or entity associated with [the care facility] engaged in a violation of the [COCCA], as defined in [the COCCA instruction]; and
>
> 2. Defendants, or any of them, *agreed to aid another person or entity associated with* [*the care facility*] *in violating* [*COCCA*]; and
>
> 3. Defendants, or any of them, engaged in an overt act in furtherance of the conspiracy to violate [COCCA]; and
>
> 4. [Schwartz] was harmed as a result of any of the Defendants' conspiracies or endeavors to violate [COCCA].

(Emphasis added.)

16

¶ 39    The jury's verdict for Schwartz on the COCCA conspiracy claim required it to conclude that MCP "and/or" HSO "agreed to aid another person or entity associated with" the care facility in violating COCCA. An "agreement" to pursue a common goal — in this case, the violation of COCCA — requires intention. Thus, any actions MCP "and/or" HSO undertook to violate COCCA (i.e., engaging in a "pattern of racketeering activity") must have been intentional.

¶ 40    For this reason, the district court also erred by enforcing the indemnity provisions as to the base COCCA damages.

### III.    Attorney Fees

### A.    Indemnification for Attorney Fees

¶ 41    In their breach of contract cross-claims, HSH, HSO, and MCP asserted that the Jorgenson parties were required to pay the attorney fees those entities incurred in defending against Schwartz's CUFTA and COCCA claims.[4] HSH, HSO, and MCP contended that these fees were due as a result of the Jorgenson parties' breach of

---

[4] All four Madison parties asserted cross-claims against the Jorgenson parties. However, the court awarded attorney fees to only HSH, HSO, and MCP because, unlike those entities, MPH wasn't a party to the applicable agreements.

(1) the indemnification provisions in the Interim Management Agreement, Consulting Agreement, Operating Lease agreement, and indemnification agreement; and (2) the settlement provision of the indemnification agreement.

¶ 42 As best we understand their briefing, the Jorgenson parties argue that, because HSO's and MCP's conduct with respect to the CUFTA and COCCA violations was intentional, the district court erred by enforcing the indemnification provisions as to the attorney fees. HSH, HSO, and MCP make three arguments in response.

¶ 43 First, HSH, HSO, and MCP argue that, regardless of the outcome of this appeal, the attorney fees award should be affirmed to the extent the fees were incurred by (and awarded to) HSH. We agree. The only Madison parties found liable for the CUFTA and COCCA violations were MCP and HSO. HSH was originally a defendant in the Schwartz litigation, but it was voluntarily dismissed on the sixth day of trial. As a result, the record contains no finding that HSH violated CUFTA or COCCA, much less that it acted intentionally in doing so. Our conclusion that the district court erred by enforcing the indemnification provisions as to the base CUFTA and COCCA damages was based on MCP's and HSO's

intentional conduct; thus, it has no bearing on whether HSH should receive its attorney fees incurred in defending against Schwartz's claims.

¶ 44    Second, HSH, HSO, and MCP argue that the indemnification provisions aren't the only contractual provisions that the Jorgenson parties breached. We again agree. The district court found that the Jorgenson parties also breached the settlement provision of the indemnification agreement. Recall that the settlement provision prohibited the Jorgenson parties from settling the Schwartz litigation unless the settlement also released HSO and HSH. The Jorgenson parties don't cite — and we can't find — any authority suggesting that the settlement provision is subject to the same type of public policy considerations as the indemnity provisions. Thus, our conclusion about the enforceability of the indemnity provisions has no bearing on any award of attorney fees that can be attributed to the settlement provision.

¶ 45    Third, HSH, HSO, and MCP assert that the Jorgenson parties also breached contractual provisions obligating them to affirmatively defend HSH, HSO, and MCP in the Schwartz litigation (as opposed to simply indemnifying them later for attorney fees they

19

incurred in supplying their own defense).  And they argue that the duty to defend is broader than the duty to indemnify such that it required the Jorgenson parties to defend them against Schwartz's claims regardless of the ultimate findings as to intentional conduct. The district court's attorney fees order didn't address this distinction (or any potential factual disputes underlying it) because neither party raised it below.  Further, none of the parties' appellate arguments on this subject are particularly well developed.

¶ 46    Given our reversal of the judgment on the merits and the attorney fees considerations noted above, we conclude that it is appropriate to reverse the attorney fees award and remand to the district court for reconsideration.  The record isn't sufficiently developed for us to determine (1) the amount of attorney fees that pertain to HSH or (2) the amount of attorney fees that stem from the Jorgenson parties' breach of the settlement provision.  The district court should consider arguments about those two issues on remand.  Additionally, both parties can make arguments to the district court about whether the Jorgenson parties are required to

pay HSO's and MCP's attorney fees under any contractual duty to defend for which the court found a breach.[5]

B.     Failure to Present Evidence of Attorney Fees at Jury Trial

¶ 47     The Jorgenson parties next argue that the district court erred by awarding HSH, HSO, and MCP attorney fees because they didn't prove the attorney fees as damages during the jury trial.  We address this issue because, if we agreed with the Jorgenson parties, then MCP, HSO, and HSH wouldn't be able to recover attorney fees under any contractual provision.  However, we discern no error.

1.     Standard of Review

¶ 48     Whether attorney fees are recoverable is a question of law that we review de novo.  *First Citizens Bank & Tr. Co. v. Stewart Title Guar. Co.*, 2014 COA 1, ¶ 32; *U.S. Fax L. Ctr., Inc. v. Henry Schein, Inc.*, 205 P.3d 512, 515 (Colo. App. 2009) (reviewing de novo any legal conclusion that provides a basis for a fees award).

---

[5] We express no opinion about the merits of either party's arguments regarding the distinction, if any, between the duty to defend and the duty to indemnify.

## 2. Analysis

¶ 49 "An agreement to indemnify another is an agreement by one party to hold another harmless from such loss or damage as may be specified in their contract." *Constable v. Northglenn, LLC*, 248 P.3d 714, 716 (Colo. 2011). In this case, the indemnity provisions contemplate that such losses or damages include the attorney fees that HSH, HSO, and MCP incurred defending against Schwartz's claims.

¶ 50 If the Madison parties had brought a separate breach of contract action against the Jorgenson parties after the completion of the Schwartz litigation, the attorney fees would be assessed as damages and would need to be considered and assessed by the fact finder in the breach of contract proceeding. *See Chartier v. Weinland Homes, Inc.*, 25 P.3d 1279, 1281 (Colo. App. 2001) ("Attorney fees that are part of the substance of a lawsuit, that is, the legitimate consequences of the tort or breach of contract sued upon, are classified as damages and are decided by the trier of fact during the damages phase of the trial."). However, fees "incurred in the litigation in which they are to be assessed, which relate to services rendered during the course of that litigation . . . may be

22

awarded as costs." *Bernhard v. Farmers Ins. Exch.*, 885 P.2d 265, 272-73 (Colo. App. 1994), *aff'd*, 915 P.2d 1285 (Colo. 1996). Thus, a "determination of the propriety of an award of [attorney] fees need not be made until that litigation is completed and the result is known." *Roa v. Miller*, 784 P.2d 826, 829 (Colo. App. 1989).

¶ 51 The fees at issue related to services rendered to the Madison parties during the jury trial phase of the proceedings. Thus, they weren't required to present evidence of their fees to the jury, and the court could award the fees after trial. *See id.* ("[U]ntil the litigation is completed, it may be impracticable to calculate the proper amount of fees to be awarded, either because the extent of the remaining services to be rendered cannot be ascertained until the dispute is settled or because the result achieved may, itself, impact upon the proper amount of fees to be awarded.").

## IV. Hearing on Attorney Fees

¶ 52 The Jorgenson parties contend that the district court erred by awarding attorney fees without conducting a hearing on the reasonableness of the fees. Because we reverse and remand the attorney fees award for the reasons described in Part III.B.2 above, we need not address this contention.

## V.    Disposition

¶ 53    The judgment is reversed, and the case is remanded for proceedings consistent with this opinion.

JUDGE J. JONES and JUDGE MEIRINK concur.