Carol CONSTABLE, f/k/a Carol Graham, d/b/a Flowers n' Roses, Petitioner

v.

NORTHGLENN, LLC, a Colorado limited liability company and Jaylon Inc., Respondents.

No. 09SC1063.

Supreme Court of Colorado, En Banc.

March 21, 2011.

Campbell, Latiolais & Ruebel, P.C., Robyn Averbach, Jeffrey Clay Ruebel, Denver, Colorado, Attorneys for Petitioner.

Hall & Evans, L.L.C., Alan Epstein, Denver, Colorado, Ray Lego & Associates, Michael L. Adams, Greenwood Village, Colorado, Attorneys for Respondent.

Justice COATS delivered the Opinion of the Court.

Constable sought review of the court of appeals' judgment in *Northglenn, LLC v. Constable*, No. 08CA2045, 2009 WL 3863417 (Colo.App. Nov. 19, 2009) (not published pursuant to C.A.R. 35(f)), reversing the district court's order of summary judgment in her favor. The district court had concluded that an indemnity provision of the parties' lease agreement was unenforceable for reasons of public policy. The court of appeals reversed, finding that the indemnity provision was not void as against public policy because it clearly reflected the intent of the parties for Constable to indemnify Northglenn against injuries sustained as a result of Northglenn's own negligence and because it did not nullify any nondelegable duty of landowners to maintain their property in a safe condition.

Because the language of the indemnity provision clearly and unequivocally expresses the intent of the parties that Constable indemnify Northglenn for injuries or losses suffered by her customers in the shopping center's parking lot as a result of Northglenn's negligence, and because that provision does not contravene public policy by purporting to delegate a duty made nondelegable by statute, the judgment of the court of appeals is affirmed.

## I.

Northglenn, LLC, the owner of a shopping center, was named as a defendant in a lawsuit filed by a woman who slipped on ice in the shopping center's parking lot. Northglenn in turn filed a third-party complaint against Carol Constable, who leased commercial space from Northglenn and operated a flower shop in the shopping center, seeking indemnity on the basis of their lease agreement. Constable moved for a determination of law pursuant to C.R.C.P. 56(h), asserting that the indemnity provision of the lease was void as against public policy both because it failed to clearly express the intent of the parties to indemnify Northglenn for its own negligence and because it purported to relieve Northglenn of nondelegable duties, over which Northglenn had exclusive control.

The five-year lease between Constable and Northglenn contained a provision indicating that Constable agreed to indemnify Northglenn from liability for bodily injury or property damage sustained by anyone in "the Premises" or elsewhere in "the Center," as long as that person was present to visit Constable's shop or as a result of her business.[1] The term "Premises" was defined as the floor area comprising Constable's shop, while the "Center" was defined as "that certain shopping center ... currently known as The Washington Center" wherein the Premises are located. An express exception to Constable's indemnity obligation indicated, however, that she would have "no obligation to indemnify [Northglenn] against harm resulting from [Northglenn's] own gross negligence or intentional torts."

---

1. The precise wording of the provision, in pertinent part, was as follows: "Tenant agrees to exonerate, hold harmless, protect and indemnity [sic] Landlord from and against any and all losses, damages, liability, claims, suits or actions, judgments, costs and expenses which may arise as a result of any bodily injury, personal injury, loss of life or property damage sustained during the term of this lease by any person or entity ... in the Premises, or elsewhere in the Center if present in order to visit the Premises, or as a result of Tenant's business...."

In a different section altogether, the lease agreement required Northglenn, as landlord, to keep the "Community Areas," defined to include all parking areas and driveways, in "reasonably good order, condition and repair." In that same provision, the lease specified, however, that Constable's "sole right and remedy" for Northglenn's failure to maintain the parking lot would be for Constable to cause the maintenance to be performed herself and to deduct the expenses of that maintenance from her rent.

The district court agreed with Constable that the lease provision was unenforceable, both because it purported to make her responsible for community areas left in the exclusive control of Northglenn and because it failed to clearly define the injuries that would trigger Constable's obligation to indemnify. As a result of this finding, it immediately granted summary judgment in Constable's favor. On direct appeal by Northglenn, the court of appeals reversed, concluding instead that the lease clearly reflected the parties' mutual intent that Constable indemnify Northglenn for injuries sustained in the community areas by her customers, whether or not Northglenn exercised exclusive control over those areas and whether or not those injuries resulted from Northglenn's own negligence. In addition the court of appeals concluded that the indemnity provision did not purport to delegate a duty made nondelegable by statute and thereby violate public policy.

We granted Constable's petition for review on the question whether the court of appeals erred in finding that the indemnity provision is not void as against public policy.

## II.

■ An agreement to indemnify another is an agreement by one party to hold another harmless from such loss or damage as may be specified in their contract. *Alzado v. Blinder, Robinson & Co.*, 752 P.2d 544, 553 (Colo.1988). While the public policy of this state precludes making an agreement to indemnify an actor for damages resulting from his own "intentional or willful wrongful acts," *Bohrer v. Church Mut. Ins. Co.*, 965 P.2d 1258, 1262 (Colo.1998); *Equitex, Inc. v. Un-*

*gar*, 60 P.3d 746, 750 (Colo.App.2002) (internal quotation marks omitted); *see also* 41 Am.Jur.2d, *Indemnity* § 12 (2d ed. 2005) (citing *Equitex*), the same cannot be said of agreements to hold a party harmless for its own negligence. *See, e.g., Pub. Serv. Co. v. United Cable Television, Inc.*, 829 P.2d 1280, 1283 (Colo.1992).

■ Quite the contrary, an agreement purporting to indemnify a party against liability for its own negligence *will* be enforced as written as long as it contains a clear and unequivocal expression that the parties intended that result. *United States v. Seckinger*, 397 U.S. 203, 211, 90 S.Ct. 880, 25 L.Ed.2d 224 (1970); *Pub. Serv.*, 829 P.2d at 1283; *Williams v. White Mountain Constr. Co.*, 749 P.2d 423, 426 (Colo.1988); *accord Lahey v. Covington*, 964 F.Supp. 1440, 1445–46 (D.Colo.1996); *Zimmerman v. Baca*, 346 F.Supp. 172, 178 (D.Colo.1972). Although an intent to indemnify another for its own negligence may not be a reasonable inference from less than clear contractual provisions, in a commercial setting involving sophisticated parties of generally equal bargaining power, a category in which we have in the past included lessor-lessee agreements between two businesses, *see Schneiker v. Gordon*, 732 P.2d 603, 610 & n. 4 (Colo.1987), courts justifiably have less concern about either contracts of adhesion or a failure of the parties to appreciate the import of unequivocal contractual terms. *See Pub. Serv.*, 829 P.2d at 1285 (citing *Glaspell v. Ohio Edison Co.*, 29 Ohio St.3d 44, 505 N.E.2d 264 (1987)); *accord Boulder Plaza Residential, LLC v. Summit Flooring, LLC*, 198 P.3d 1217, 1221 (Colo.App.2008). In such commercial settings, we have therefore been willing to find broad language of indemnity holding another harmless against liability generally, without any specific reference or limitation to its own negligence, to constitute an adequate expression of intent to indemnify to the extent, but only to the extent, otherwise permitted by public policy. *See Pub. Serv.*, 829 P.2d at 1283; *see also Chadwick v. Colt Ross Outfitters, Inc.*, 100 P.3d 465, 467 (Colo.2004).

■ There can be no serious question but that the lease agreement at issue here con-

tains a sufficiently clear expression of intent that Constable would indemnify Northglenn against liability, including even liability for its own negligence. In the lease agreement, Constable "agrees to exonerate, hold harmless, protect and indemni[fy] [Northglenn] from and against any and all losses, damages, liability, claims, suits or actions, judgments, costs and expenses" which may arise during the lease term due to any bodily injury sustained in the shopping center's community areas by persons present to "visit the Premises" or "as a result of [Constable's] business." As we have acknowledged in prior holdings, this kind of "any and all" language obviously encompasses injuries resulting from Northglenn's own negligence. *See Pub. Serv.*, 829 P.2d at 1283.

Unlike those cases in which the intent of the parties is articulated no more expressly than this, however, it is not necessary here to derive an intent to indemnify against injuries for which Northglenn was itself responsible from this broad language alone. The agreement's additional express exclusion of Northglenn's "own gross negligence or intentional torts" from Constable's indemnity obligation is an even clearer indication that in using broad language of liabilities generally the parties contemplated liability resulting from the fault of Northglenn, as well as anyone else. An exception for Northglenn's gross negligence would otherwise have been wholly unnecessary. And by excluding only injuries resulting from at least *gross* negligence on the part of Northglenn, the agreement plainly left within Constable's obligation to indemnify any harm resulting from Northglenn's own simple negligence. Unlike a number of other contracts we have nevertheless found to be adequately clear and unambiguous, *see, e.g., id.* at 1283–84; *Heil Valley Ranch, Inc. v. Simkin,* 784 P.2d 781, 785 (Colo.1989), the agreement in this case is expressly tailored to exclude from its broad indemnity obligation only that conduct for which an agreement to indemnify has arguably been held to violate public policy. *See Equitex,* 60 P.3d at 750; *cf. Chadwick,* 100 P.3d at 468; *see also* 41 Am.Jur.2d, *Indemnity* § 12 (citing *Equitex* ).

To the extent that an agreement purporting to indemnify another against its own negligence must be declared void as against public policy whenever it lacks a sufficiently clear and unambiguous expression of the parties' intent to do so, the agreement in this case is therefore not void. And even the district court did not conclude otherwise. Rather than finding ambiguity concerning the parties' intent that Northglenn be indemnified against harm resulting from its own negligence, the district court found only ambiguity concerning the particular patrons to be included within Constable's obligation and ambiguity concerning a possible right of apportionment among Northglenn's tenants. As the court of appeals recognized, however, while ambiguity in the phrases "visit the Premises" or "as a result of Tenant's business" may have significance for an attempt to the enforce the indemnity provision against Constable with regard to any particular injured party, it could not affect the clarity of the agreement's expression of intent to indemnify Northglenn against its own negligence, with which public policy is concerned.

### III.

█ Notwithstanding our well-established precedent upholding, as consistent with public policy, agreements containing a clear and unambiguous expression of intent to indemnify a party against its own simple negligence, Constable urges us to hold that an indemnity agreement nevertheless contravenes public policy, and is therefore void, to the extent that it purports to indemnify another against liability for its own breach of a duty of reasonable care that is nondelegable. Constable's theory appears to be that indemnity against liability for violating a duty is tantamount to a delegation of that duty or, at least, that permitting a party to be indemnified against liability for the breach of a nondelegable duty contravenes the policy reasons for imposing the duty on that party in the first place. Constable asserts that, at least under these circumstances, the Premises Liability Act, § 13–21–115, C.R.S. (2010), imposes a nondelegable duty on Northglenn to use reasonable care in maintaining its parking lot for the protection of shopping center patrons, and therefore the indemnity

provision of the lease agreement violates public policy.[2]

█ An agreement to indemnify against liability for the breach of a duty is clearly not the equivalent of delegating that duty to another. An agreement to indemnify in no way purports to relieve the indemnitee of a duty owed to someone else, whether that duty is considered delegable or not. As in this case, an indemnitee remains liable to another for injury resulting from its breach of a duty owed to the injured party, and its indemnitor merely agrees to hold the indemnitee harmless from such loss or damage as may be specified in their contract. Significantly, an agreement to indemnify, by definition, does not (and could not, without becoming something more than an agreement to indemnify) purport to substitute an indemnitor for an indemnitee, or in any way diminish the indemnitee's obligation to a party it has injured, whether the indemnitor ultimately fulfills its agreement or not.

Whether, as a matter of public policy, one should nevertheless be precluded from insuring against its liability for the breach of a nondelegable duty involves virtually the same calculation already resolved with regard to indemnity generally. Since neither case involves shifting or relieving an indemnitee of its duty, the relevant question in both instances is whether the public policy of the jurisdiction reckons it socially beneficial to permit individual arrangements, or contracts, to insure against loss resulting from one's own fault. With regard to intentional torts or wrongs that can be characterized as willful, it is widely accepted, both within and outside this jurisdiction, that public policy does not permit insuring oneself against the ultimate legal consequences of one's conduct.

See *Bohrer,* 965 P.2d at 1262; *Equitex,* 60 P.3d at 750; *see also Safeco Ins. Co. v. Liss,* 303 Mont. 519, 527, 16 P.3d 399, 404 (2000); *Davis v. Commonwealth Edison Co.,* 61 Ill.2d 494, 336 N.E.2d 881, 885 (1975); 41 Am. Jur.2d, *Indemnity* § 12. With regard to acts of simple negligence, however, it is widely held to be socially beneficial to permit the allocation of costs and mitigation of risk through indemnity agreements, liability insurance, or otherwise. *See* 57A Am.Jur.2d *Negligence* § 48 (2d ed. 2004).

█ Strong policy considerations favoring freedom of contract generally permit business owners to allocate risk amongst themselves as they see fit. *See Shelter Mut. Ins. Co. v. Mid–Century Ins. Co.,* 246 P.3d 651 (Colo.2011); *Country Mut. Ins. Co. v. Hertz Corp.,* 981 P.2d 1118, 1121 (Colo.App.1999); *see also Cont'l Heller Corp. v. Amtech Mech. Servs., Inc.,* 53 Cal.App.4th 500, 61 Cal. Rptr.2d 668, 671 (1997) ("The parties to an indemnity contract enjoy great freedom of action in allocating risk, subject to certain limitations of public policy." (internal quotation marks omitted)). An indemnity agreement in a commercial lessor-lessee setting is a particularly appropriate way of allocating the risk of injury befalling patrons who are present for the benefit of a lessee, rather than the lessor, and of inducing the lessor to enter into the lease in the first place. It is often the case that such an allocation of the risk of injury, without regard to fault, serves as a constituent component of the consideration demanded for entering into a lease agreement. *See, e.g., Fresh Cut, Inc. v. Fazli,* 630 N.E.2d 575, 578 (Ind.Ct.App.1994), *vacated in part on other grounds,* 650 N.E.2d 1126 (Ind.1995); *Appalachian Power*

---

2. Constable asserts that as the landowner, Northglenn had a nondelegable duty of reasonable care to invitees. We have previously held that a landowner may not delegate its duty of care to an independent contractor performing work on the premises such that the landowner will be free from liability for injuries occurring after the contractor no longer has control of the premises. *See Springer v. City and Cnty. of Denver,* 13 P.3d 794, 804 (Colo.2000). We have also made clear, however, that a landowner within the contemplation of the Premises Liability Act includes not only the title holder but others having possession of the property or having legal responsibility for its

condition. *Pierson v. Black Canyon Aggregates, Inc.,* 48 P.3d 1215, 1219 (Colo.2002). And by possession, the Act does not intend exclusive possession alone, such that an independent contractor sharing possession may qualify as a landowner, along with the title holder, and share the landowner's duty of reasonable care to invitees. *See id.* at 1220. Because we determine that an agreement to indemnify with regard to even a nondelegable duty does not contravene public policy, it is unnecessary for us to parse the relative possessory interests of Northglenn and Constable in the community areas involved in this case.

*Co. v. Sanders,* 232 Va. 189, 349 S.E.2d 101, 106 (1986); *Cooper v. H.B. Owsley & Son, Inc.,* 43 N.C.App. 261, 258 S.E.2d 842, 845–46 (1979).

The propriety of securing by contract indemnity against the financial burden resulting from breach of even a *nondelegable* duty is also widely acknowledged in other jurisdictions, in a variety of contexts. *See, e.g., Robinson v. Shapiro,* 646 F.2d 734, 739 (2d Cir.1981) (nondelegable duty under state labor law); *Sequa Coatings Corp. v. N. Ind. Commuter Transp. Dist.,* 796 N.E.2d 1216, 1225 (Ind.Ct.App.2003) (nondelegable duties imposed on common carrier), *aff'd on reh'g,* 800 N.E.2d 926 (Ind.Ct.App.2003); *Chem. Bank v. Stahl,* 237 A.D.2d 231, 655 N.Y.S.2d 24, 25 (N.Y.App.Div.1997) (nondelegable duties imposed on landlord); *W.M. Schlosser Co. v. Maryland Drywall Co.,* 673 A.2d 647, 653 n. 13 (D.C.1996) (nondelegable duty to provide safe work place); *De Los Santos v. Saddlehill, Inc.,* 211 N.J.Super. 253, 511 A.2d 721, 726 (N.J.Super.Ct.App.Div.1986) (nondelegable duties imposed on landlord); *Dykstra v. Arthur G. McKee & Co.,* 100 Wis.2d 120, 301 N.W.2d 201, 206–07 (1981) (nondelegable duties imposed by state safe-place statute).

Given the express language chosen by the parties in this case, we consider it unnecessary to further determine whether an agreement to indemnify against a risk that is wholly within the control of an indemnitee might alter the public policy calculus or evidence too great a disparity in the bargaining power of the parties. Despite Constable's characterization, we do not understand the lease provision requiring Northglenn to keep community areas, like the parking lot, in "good order, condition and repair" to have precluded Constable from inspecting and performing additional maintenance as she saw fit. This language makes all the more clear that nothing in the contract was intend-ed to relieve Northglenn of its duty involving maintenance of the common areas, but it implies little about Constable's concomitant right, or obligation to invitees, with regard to common areas. Additional language of this provision of the agreement does, however, make clear that, as between the contracting parties, Northglenn would have the primary duty to maintain the common areas but that Constable's "sole right and remedy" for Northglenn's failure to do so would be to cause the maintenance to be performed herself and to deduct the expenses of such maintenance from the rent owed under the lease.

Because the agreement between the parties does not purport to limit Constable's right to ensure that the community areas remained in a safe condition, and in fact appears to contemplate her obligation to do so, we need not consider whether a complete lack of control over affected areas might, under some set of circumstances, also render an indemnity provision void as against public policy.

## IV.

Because the language of the indemnity provision clearly and unequivocally expresses the parties' intent that Constable indemnify Northglenn for injuries or losses suffered by her customers in the shopping center's parking lot, including even injuries resulting from Northglenn's own negligence, and because it does not contravene public policy by purporting to delegate a duty made nondelegable by statute, the judgment of the court of appeals is affirmed.