**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**August 14, 2017**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

HIGBY CRANE SERVICES, LLC;
NATIONAL INTERSTATE
INSURANCE COMPANY,

      Plaintiffs - Appellants/
Cross-Appellees,

v.

NATIONAL HELIUM, LLC, a
Delaware company; DCP
MIDSTREAM, LP, a Delaware limited
partnership,

      Defendants - Appellees/
Cross-Appellants.

Nos. 16-3271 & 16-3279
(D.C. No. 6:10-CV-01334-JAR-GLR)
(D. Kan.)

**ORDER AND JUDGMENT**[*]

Before **KELLY**, **MURPHY**, and **BACHARACH**, Circuit Judges.

I.    **Introduction**

    Appellee/Cross-Appellant DCP Midstream, LP ("DCP") negligently started

a fire that damaged a crane belonging to Appellant/Cross-Appellee Higby Crane

---

[*]This order and judgment is not binding precedent except under the
doctrines of law of the case, res judicata, and collateral estoppel.  It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th
Cir. R. 32.1.

Services, LLC ("Higby"). At the time of the fire, the crane was located on the grounds of a gas processing plant (the "National Helium Plant") owned by DCP's wholly owned subsidiary, National Helium, LLC. Higby's insurer, Appellant National Interstate Insurance Co. ("National"), paid for the damage under the terms of a commercial inland marine policy. National and Higby (collectively "Plaintiffs") then sued DCP, seeking to recover the cost to repair the crane. On September 28, 2015, the district court granted DCP's motion for summary judgment, concluding the anti-subrogation rule barred recovery by National against DCP because DCP was National's insured under a commercial general liability policy that also covered the loss. Several months later, the district court granted Plaintiffs' motion for summary judgment on DCP's request for attorney's fees.

In Appeal No. 16-3271, Plaintiffs challenge the grant of summary judgment in favor of DCP, arguing any promise Higby made to procure insurance covering DCP for DCP's own negligence is void under Colorado law. *See* Colo. Rev. Stat. § 13-21-111.5(6). In Appeal No. 16-3279, DCP argues the district court erred by granting summary judgment to Plaintiffs on the attorney's fee issue.

Exercising jurisdiction over both appeals pursuant to 28 U.S.C. § 1291, this court **reverses** the grant of summary judgment to DCP in Appeal No. 16-3271 and **affirms** the grant of summary judgment to Plaintiffs in Appeal No. 16-3279.

## II.    Background

Additional facts detailing the genesis of this ongoing dispute between Plaintiffs and DCP are fully set out in this court's prior opinion in this matter. *Higby Crane Servs., LLC v. Nat'l Helium, LLC*, 751 F.3d 1157, 1159-60 (10th Cir. 2014).  Relevant to this appeal, Higby and DCP[1] entered into an agreement titled Master Service Agreement ("MSA") on November 1, 2001.  Pursuant to its terms, the MSA "establish[ed] certain general terms and conditions which shall apply to and become part of each and every contract, whether written or oral, entered into between the parties."  One of those terms and conditions required Higby to "carry and pay for" commercial general liability ("CGL") insurance coverage and to name DCP as an additional insured under the policy (the "Additional Insured Provision").  Six years later, Higby obtained the policy at issue here—a CGL policy from National—for the period from September 13, 2007, through September 13, 2008 (the "CGL Policy").

In August 2008, DCP telephoned Higby and requested it to perform a job at the National Helium Plant (the "2008 Work Order").  A Higby crew began work on August 19, 2008, but was unable to complete the project because DCP did not have a required part.  When the Higby crew arrived at the National Helium Plant the next day, it learned a flash fire had damaged Higby's crane, rendering it

_____

[1]At the time the MSA was executed, DCP was known as Duke Energy Field Services, LP.

inoperable.  DCP concedes the fire was caused by its own negligence.

In addition to the CGL Policy, National insured Higby for direct physical loss to Higby's property under the terms of a separate commercial inland marine policy ("CIM Policy").  National paid Higby for its loss pursuant to the terms of the CIM Policy.  *Id*. at 1158.  National and Higby then brought this action against DCP, seeking to recover the amount of the loss.[2]  After the matter was removed from Kansas state court to federal district court, Plaintiffs filed a motion for summary judgment which was granted by the district court.  *Id*. at 1160.  On appeal, this court reversed the district court's ruling and remanded the matter for further proceedings.  *Id*. at 1167.

On remand, the district court was again presented with cross-motions for summary judgment.  In their motion, Plaintiffs argued, *inter alia*, that the anti-subrogation rule did not bar their claims against DCP because Higby owed no contractual duty to procure insurance covering DCP for the loss at issue.  Relying on a Colorado statute enacted in July 2007, Plaintiffs asserted Colorado law expressly prohibits any construction contract requiring one party to indemnify, insure, or defend another party against liability arising out of the negligence or

---

[2]National claimed a right of subrogation through Higby.  *See Cont'l Divide Ins. Co. v. W. Skies Mgmt., Inc.*, 107 P.3d 1145, 1148 (Colo. App. 2004) ("Under the doctrine of equitable subrogation, when an insurer has paid its insured for a loss caused by a third party, it may seek recovery from the third party."). Plaintiffs allege both Higby and National made payments to repair the damage to Higby's crane.

fault of the indemnitee.  *See* Colo. Rev. Stat. § 13-21-111.5(6).  Accordingly, Plaintiffs argued, any agreement between the parties requiring Higby to carry insurance covering DCP for DCP's own negligence was unenforceable.

The district court denied Plaintiffs' motion and granted DCP's motion in part.  The court concluded Colo. Rev. Stat. § 13-21-111.5(6) (the "Anti-Indemnification Statute") was inapplicable because the MSA was the operative contract and it was entered into prior to the Statute's July 2007 effective date.  The court further concluded Plaintiffs' action was barred by the anti-subrogation rule because the CGL Policy covered DCP for the damage to Higby's crane.[3]  Subsequently, the district court denied DCP's request for attorney's fees.

Plaintiffs appeal from the grant of summary judgment to DCP and the denial of its motion for summary judgment.  DCP cross-appeals from the denial of its request for attorney's fees.

## III.  Plaintiffs' Appeal

This court reviews the disposition of a motion for summary judgment de novo, applying the same standard as the district court.  *Cornhusker Cas. Co. v. Skaj*, 786 F.3d 842, 849 (10th Cir. 2015).  Summary judgment is only appropriate

---

[3]Plaintiffs argued the CGL Policy excluded coverage for damage to property owned by Higby.  Because Higby owned the crane, Plaintiffs asserted DCP's negligence was not covered under the terms of the CGL Policy.  The district court ruled in DCP's favor and Plaintiffs challenge that ruling in this appeal.  Because we conclude the Anti-Indemnification Statute prohibits the coverage at issue, it is unnecessary to address this issue.

if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Applying the applicable standard, the district court erred by granting summary judgment in favor of DCP.

National claims a right of subrogation in this matter through Higby for amounts paid to Higby under the CIM Policy. *See supra* n.2. DCP has consistently argued the anti-subrogation rule bars the claims raised in the suit because DCP is an insured of National under the CGL policy and the CGL Policy also covers the loss at issue.[4] *See DeHerrera v. Am. Family Mut. Ins. Co.*, 219 P.3d 346, 351 (Colo. App. 2009) ("Under the anti-subrogation rule, an insurer may not seek recovery against its insured on a claim arising from the risk for which the insured was covered."). The district court identified the central question presented in the cross-motions for summary judgment as "whether the anti-subrogation rule prohibits [this] subrogation action against DCP for loss resulting from DCP's negligence."

Plaintiffs assert the CGL Policy cannot cover DCP for the loss at issue because the Additional Insured Provision is void under Colorado's Anti-Indemnification Statute which bars a construction business from contracting out

---

[4]In its motion for summary judgment, DCP argued it was immaterial for purposes of the anti-subrogation rule "that the loss was paid under a CIM Policy and the coverage DCP would seek is under the CGL Policy." Because the Additional Insured Provision is void under the Anti-Indemnification Statute, it is not necessary to address the correctness of this argument.

liability for its own negligence.  Colo. Rev. Stat. § 13-21-111.5(6).  The statute is based on the Colorado legislature's finding that the use of contract provisions to shift financial responsibility for such negligence circumvents the intent of tort law.  *Id.* § 13-21-111.5(6)(a)(III).  Any provision in a construction agreement that requires one party to purchase insurance covering the other party for liability resulting from the other party's own negligence is void as against public policy.  *Id.* § 13-21-111.5(6)(d)(I).  Because DCP concedes it is solely responsible for the fire that damaged Higby's crane, if the Anti-Indemnification Statute applies to the operative contract between DCP and Higby the anti-subrogation rule is inapplicable because DCP is not covered by the CGL Policy for the loss at issue.

As it did before the district court, DCP argues the MSA is the operative contract between itself and Higby.  Because the MSA predates the Anti-Indemnification Statute, DCP takes the position the Statute does not apply retroactively to invalidate the Additional Insured Provision in the MSA.  *See Riley v. People*, 828 P.2d 254, 257 (Colo. 1992) ("Legislation is presumed to have prospective effect unless a contrary intent is expressed by the General Assembly.").  Plaintiffs argue the 2008 Work Order, which was entered into after

the effective date of the Anti-Indemnification Statute, is the operative contract.[5]

We agree.

The MSA specifically states that its purpose is to "establish certain general terms and conditions which shall apply to and become part of each and every contract, whether written or oral, entered into between the parties." "Contracts Between the Parties" is thereafter defined as "[a]ny [written or oral] contract whereby [Higby] agrees to perform work and/or provide items of equipment, machinery, materials or supplies for [DCP]." Higby did not agree to perform any work for DCP pursuant to the terms of the MSA. It did, however, so agree on August 18, 2008, when it orally entered into the 2008 Work Order. The unchallenged evidence in the record confirms this oral contract.

Higby received a call from DCP requesting that Higby send a crane to the National Helium Plant at 10:00 a.m. on August 19, 2008, to be used to lift a heat exchanger. Higby accepted the job, sending the crane to the agreed-upon location at the agreed-upon time. Higby's crane was damaged while it was completing the work it orally agreed to perform. Pursuant to its terms, the MSA established the general terms and conditions of the oral agreement. Thus, the 2008 Work Order

---

[5]DCP argues that Plaintiffs have waived the argument that the 2008 Work Order is the operative contract because it was not presented to the district court. The district court's order, however, specifically states: "Plaintiffs argue that the MSA is not the contract at issue, but instead the critical inquiry under the [Anti-Indemnification Statute] is the date the parties entered into the contract pertaining to the work that Higby was performing at the time of the fire. That work order was issued August 18, 2008, one year after the effective date of the statute."

is the operative contract between the parties and is applicable to the loss at issue. It contains the general terms and conditions set out in the MSA, including the Additional Insured Provision, and the specific terms and conditions mutually agreed to by the parties on August 18, 2008.

Because the 2008 Work Order was a new contract entered into after the effective date of the Anti-Indemnification Act, Higby's agreement to obtain insurance covering DCP for DCP's own negligence is void under Colorado law. *Id*. § 13-21-111.5(6)(d)(I). Accordingly, National is not DCP's insurer for purposes of the loss at issue and the anti-subrogation rule does not apply.

DCP makes several fruitless attempts to avoid this result. It argues the 2008 Work Order cannot be the operative contract because it does not reference the MSA. DCP does not explain why each such contract must contain a reference to the MSA. The MSA clearly states that its terms apply to "each and every contract, whether written or oral, entered into between the parties." The purpose of the MSA is to supply the "general terms and conditions" governing any future contracts into which the parties may enter. The MSA specifically provides that its provisions "shall apply to and become part of each and every" subsequent contract.

DCP also argues the August 2008 project at the National Helium Plant was an "operation" Higby was required to fulfill under the terms of the 2001 MSA. This argument fails. No provision in the MSA requires DCP to engage Higby to

-9-

perform any "operation" for DCP and, likewise, no provision requires Higby to accept any request made by DCP. Instead, the MSA clearly contemplates that any work will commence only if the parties enter into subsequent contracts pursuant to the terms of which Higby agrees to "perform work and/or provide items of equipment, machinery, materials or supplies."

Finally, DCP asserts the CGL Policy could not have been issued pursuant to the 2008 Work Order because it was obtained months earlier, on September 13, 2007. While this is true, it is irrelevant. The 2008 Work Order incorporated all the terms and conditions of the MSA, one of which was the requirement that Higby name DCP as an additional insured in a commercial general liability policy and carry that insurance throughout the term of the MSA. Higby agreed to procure CGL insurance when the MSA was executed in 2001 "in consideration of having the opportunity to provide services" to DCP. As DCP itself states in correspondence it sent to Higby in October 2005, Higby could not perform work for DCP unless it could first prove the coverage was in place. The 2008 Work Order incorporated Higby's agreement to carry CGL insurance covering DCP during the performance of its work for DCP. Thus, the date on which Higby purchased the CGL Policy has no bearing on whether the 2008 Work Order is the operative contract. The coverage was latent until the parties entered into the 2008 Work Order pursuant to the terms of which Higby agreed to perform the project at the National Helium Plant.

One final issue must be addressed—whether the 2008 Work Order is a construction agreement under the terms of the Anti-Indemnification Statute.[6] DCP makes no credible argument that it is not. The Anti-Indemnification Statute defines a construction agreement as "a contract, subcontract, or agreement for materials or labor for the construction, alteration, renovation, repair, maintenance, . . . or observation of any building, building site, structure, . . . gas or other distribution system, or other work dealing with construction or for any moving, demolition, or excavation connected with such construction." Colo. Rev. Stat. § 13-21-111.5(6)(e)(I). Here, Higby's work order shows it performed the following work for DCP: "Pulled off end caps to plug tubes on heat exchangers." The work was performed at a gas processing plant. The 2008 Work Order meets the definition of a construction agreement.

Colorado law prohibits DCP from contracting with Higby to obtain additional-insured coverage for liabilities arising from DCP's own negligence. Thus, any promise Higby made in the 2008 Work Order to provide such coverage is unenforceable and the CGL Policy does not cover DCP under the circumstances of this case. Consequently, DCP is not National's insured for the loss at issue and the anti-subrogation rule is inapplicable. Because DCP has conceded the damage

_____

[6]DCP admits the MSA is governed by Colorado law and does not argue the 2008 Work Order is not also so governed.

to Higby's crane was caused by its own negligence, the district court erred by denying Plaintiffs' motion for summary judgment.

## IV.    DCP's Cross-Appeal

### A.    Attorney's Fees

In a cross-motion for summary judgment, DCP argued it was entitled to recover its attorney's fees and costs for two reasons. According to DCP, Higby breached the waiver-of-subrogation provision in the MSA and breached the "other insurance" provision in the MSA by obtaining the CIM Policy, thereby causing the CGL Policy to potentially not be primary coverage for the loss at issue. According to DCP, these two breaches caused it to incur significant attorney's fees and costs associated with defending Plaintiffs' lawsuit. The district court granted Higby's cross-motion for summary judgment, concluding Higby did not breach either provision.

A party may recover attorney's fees based upon a showing of a material breach of the MSA. *See Bernhard v. Farmers Ins. Exch.*, 915 P.2d 1285, 1287 (Colo. 1996) ("As a general rule, in the absence of a statute, court rule, or private contract to the contrary, attorney fees are not recoverable by the prevailing party in either a contract or tort action." (footnote omitted)). Even assuming Higby breached the two relevant provisions of the MSA,[7] any such breach was not

---

[7]Because we reverse the district court's entry of summary judgment in favor of DCP on the merits of Plaintiffs' claims, DCP is no longer the prevailing

(continued...)

-12-

material under the unique facts of this case. The purpose of both the waiver-of-subrogation provision and the other-insurance provision is to preserve DCP's rights under the Additional Insured Provision. DCP's assertion that Higby breached the waiver-of-subrogation provision and the other-insurance provision is simply another avenue by which DCP attempts to enforce the Additional Insured Provision. Because the Additional Insured Provision is void as to the loss at issue in this matter, any breach of those provisions is not material.

### B. Breach of the MSA

DCP argues that if the grant of summary judgment in its favor is reversed, this court should remand this matter to the district court to permit the court to revisit its ruling that Higby did not breach the MSA by failing to purchase CGL insurance covering DCP for DCP's own negligence. Plaintiffs counter that the MSA was not breached because parties cannot contract around the requirements of Colorado law.

This court has concluded any promise Higby made to purchase insurance covering DCP for the loss at issue is void under Colorado's Anti-Indemnification

---

[7](...continued)
party in Plaintiffs' subrogation action. DCP's claim of entitlement to attorney's fees, however, is based on its counter-claim that Higby breached the MSA by "permitting or failing to preclude" National's subrogation action. Nowhere in its appellate brief does DCP identify the other damages it sought for the alleged breaches of the MSA. Plaintiffs, however, do not argue DCP's claim for attorney's fees was not properly pleaded. *See Lawry v. Palm*, 192 P.3d 550, 569-70 (Colo. App. 2008) (discussing the availability of attorney's fees as either consequential or special damages).

Statute which bars a construction business from contracting out liability for its own negligence. Colo. Rev. Stat. § 13-21-111.5(6). Colorado "[c]ourts will not enforce contracts or contract terms that are void as contrary to public policy." *Norton Frickey, P.C. v. James B. Turner, P.C.*, 94 P.3d 1266, 1267 (Colo. App. 2004). Accordingly, as a matter of law, DCP cannot show that Higby breached its agreement to provide such coverage and it is unnecessary to remand this matter for further proceedings. *See* Colo. Rev. Stat. § 13-21-111.5(6)(d)(I) (determining that contract provisions like the one at issue here are "void as against public policy").

## V. Conclusion

The district court's grant of summary judgment in favor of DCP in Appeal No. 16-3271 is **reversed**. The matter is **remanded** with instruction to enter judgment in favor of Plaintiffs based on this court's conclusion that the anti-subrogation rule is inapplicable because the Additional Insured Provision of the 2008 Work Order is void, in relevant part,[8] pursuant to the terms of the Colorado Anti-Indemnification Statute.

---

[8]Because the issue is not before us, we express no opinion on whether the Additional Insured Provision is enforceable as to coverage for claims not based on DCP's own negligence. We note, however, that the severability clause of the MSA states as follows: "If any provision of this Agreement shall be held invalid, illegal or unenforceable, the validity, legality or enforceability of the other provisions of this Agreement shall not be affected thereby, and there shall be deemed substituted for the provision at issue a valid, legal and enforceable provision as similar as possible to the provision at issue."

The district court's grant of summary judgment in favor of Plaintiffs on the attorney's fee issue raised in Appeal No. 16-3279 is **affirmed**.

ENTERED FOR THE COURT


Michael R. Murphy
Circuit Judge